IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-293-D-2

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| PRENTICE BEST, ) | |
| ) | |
| Defendant. ) | |

On March 19, 2021, Prentice Best ("Best" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 103]. On May 13, 2021, Best, pro se, submitted a letter supplementing his motion for compassionate release [D.E. 107]. On June 8, 2021, Best, through counsel, filed a memorandum in support [D.E. 108]. On June 12, 2021, the government responded in opposition [D.E. 110]. As explained below, the court denies Best's motion.

I.

On May 20, 2020, pursuant to a written plea agreement, Best pleaded guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, and distribution of 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine. See [D.E. 16, 70]. On September 15, 2020, the court held Best's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 79, 82, 85]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Best's total offense level to be 27, his criminal history category to be IV, and his advisory guideline range to be 120 to 125 months'

imprisonment. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Best to 120 months' imprisonment. See [D.E. 82, 85]. The court also announced that even if it miscalculated the advisory guideline range, it would impose the same sentence as an alternative variant sentence.

On March 19, 2021, Best moved for compassionate release under the First Step Act. See [D.E. 103]. On June 22, 2021, the government responded in opposition. See [D.E. 110].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the

2

safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1.  Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section]

---

        percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Best acknowledged that he has not exhausted his administrative remedies but requests that the court waive the exhaustion requirement. See [D.E. 108] 3–4. Best argues that waiver is appropriate because of the urgency of his children having "their father's presence in their lives to love and support them." See id. at 4. The government asks the court to dismiss Best's motion for compassionate release because Best has not fulfilled the exhaustion requirement. See [D.E. 110] 1, 16–17. The court assumes without deciding that waiver is appropriate and addresses Best's motion on the merits.

Best seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Best cites the COVID-19 pandemic, the spread of COVID-19 within the Bureau of Prisons ("BOP"), his health conditions, his daughter and other family members' need for care, his non-violent record, his rehabilitation efforts, and his release plan. See [D.E. 103, 107, 108].

As for the medical condition of the defendant policy statement, the policy statement requires

5

that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Best argues that his health conditions including vertigo, low heart rate, high blood pressure, and asthma put him at heightened risk of serious infection from COVID-19. See [D.E. 103] 1. Best, however, refused the COVID-19 vaccine. See [D.E. 111]; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts that "have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances"). Best has provided no medical or other reason why he cannot receive the COVID-19 vaccine. Best has not argued that he is otherwise unable to manage his health conditions while in custody. Accordingly, reducing Best's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "family circumstances" policy statement, the policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). Best claims he needs to care for his daughters and other family members. See [D.E. 107] 1; [D.E. 108] 4. Courts have looked to the relevant BOP Program Statement for guidance in reviewing requests based on the incapacitation of a spouse or family caregiver. See, e.g., United States v. Bolden, No.

6

CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (unpublished), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Collins, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (unpublished); cf. United States v. Burrell, No. 15-CR-95 (AJN), 2020 WL 7646887, at *2 (S.D.N.Y. Dec. 23, 2020) (unpublished) (acknowledging that a court may find an extraordinary and compelling reason other than those in the application notes of U.S.S.G. §1B1.13 or BOP guidance). For requests based on incapacitation of the caregiver to a defendant's minor child, "incapacitation" is defined as "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10 at 7–8; see Bolden, 2020 WL 4286820, at *4. The BOP Program Statement says that information and documentation must show the incapacitation of the caregiver, that the caregiver is the only family member capable of caring for the child, verifiable documentation that the inmate is the parent of the child, verifiable documentation providing name and age of the child, and a release plan. Id.

Best argues that he needs to care for or help with his daughters, sister, brother, and uncle. See [D.E. 107] 1; [D.E. 108] 4–5. The policy statement does not cover care for siblings, uncles, or other extended family. See U.S.S.G. § 1B1.13 cmt. n.1(C). The family circumstance policy statement does cover care for minor children. See id. Best argues that "no one in [his] family can take his place as caregiver for his daughters." [D.E. 108] 4–5; see [D.E. 107] 1. However, Best's daughters reside with their mother[2] and Best does not claim that she has died or become

---

[2] In his motion for compassionate release, Best states that his daughters live with his mother. See [D.E. 103] 2. The PSR indicated that the children lived with their mother. See PSR ¶ 47. Regardless of where the girls reside, Best has not argued or provided evidence that either woman has died or become incapacitated.

7

incapacitated or that she cannot continue to care for them. See PSR ¶ 47. On this record, Best has not shown that his family circumstances are extraordinary and compelling and reducing Best's sentence is inconsistent with application note 1(C). See 18 U.S.C. § 3582(c)(1)(C)

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Best's health conditions, his efforts at rehabilitation, his release plan, and the need to care for his daughters, sister, and other family members are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Best offers a release plan that includes staying with his mother, working for a law firm and in construction, and helping to care for his daughters and other family members. See [D.E. 103] 2; [D.E. 107] 1; [D.E. 108] 6. However, Best has not provided evidence that his other family members have not been able to care for one another while he has been incarcerated. He has not shown that there is no one to care for his daughters. Additionally, the wide availability of COVID-19 vaccines greatly diminishes the risk to Best from COVID-19. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Best's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Best is 38 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, and distribution of 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine. See [D.E. 85]; PSR at 2, ¶¶ 1–7. Best was involved in dealing a large amount of methamphetamine. See PSR ¶¶ 14–

8

21. Best attempted to obstruct justice, driving away from instigators twice and throwing a bag of methamphetamine out of the car window when they attempted to stop him in his vehicle after observing him meeting with a heroin and methamphetamine dealer. See PSR ¶ 18. Best also has an extensive criminal history. See id. ¶¶ 26–45. Best has convictions for disorderly conduct, driving while licence revoked (seven counts), possession of stolen goods (three counts), possession of schedule VI controlled substances, possession of marijuana, and felony possession of cocaine. See id. Best also has performed poorly on probation. See id. ¶¶ 29, 31–33. He has violated four probationary sentences. See id. ¶¶ 29, 31–33. Best maintains that he has made efforts at rehabilitation while incarcerated. See [D.E.107]. He says that he has gotten clean and that he wants to take classes. See id.; [D.E. 108] 5.[3]

The court must balance Best's rehabilitative efforts with the seriousness of his criminal conduct, repeated disrespect for the law and court orders, the need to punish him, the need to promote respect for the law, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Best's potential exposure to COVID-19, his medical conditions, his need to care for his family members, and his release plan. The court recognizes that Best plans to stay with his mother upon release and that he has employment opportunities. See [D.E. 103] 1–2; [D.E. 107] 1. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Best's arguments, the government's persuasive response, the need to punish Best for his serious criminal behavior, to incapacitate Best, to promote respect for the law, to deter

---

[3] The court acknowledges that it sentenced Best in the midst of the COVID 19 pandemic and that classes and educational opportunities have been limited.

9

others, and to protect society, the court denies Best's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Best's request for home confinement, see [D.E. 103] 2, Best seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Best requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Best's request for home confinement.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 103, 108] and DISMISSES defendant's request for home confinement.

SO ORDERED. This 16 day of December, 2021.

Dever
JAMES C. DEVER III
United States District Judge

10